**Charles DISTLER, et al.,**
**Plaintiffs-Appellants,**

v.

**UNITED MINE WORKERS OF AMERICA, Defendant-Appellee.**

**No. 82–2956.**

United States Court of Appeals,
Seventh Circuit.

Submitted May 13, 1983.

Decided July 11, 1983.

---

Bernard J. Ysursa, Sprague, Sprague & Ysursa, Belleville, Ill., for plaintiffs-appellants.

Barbara Chisholm Gumbel, Edwardsville, Ill., for defendant-appellee.

Before WOOD and ESCHBACH, Circuit Judges, and CAMPBELL, Senior District Judge.*

HARLINGTON WOOD, Jr., Circuit Judge.

In this action, plaintiffs, retired members of the United Mine Workers, seek to establish that they contractually acquired pension benefit rights through a letter sent to them from a local official of the defendant union in 1957 which solicited their membership in the union. The district court, concluding that it had jurisdiction under the Labor-Management Relations Act, 29

U.S.C. § 185(a), addressed the merits, and found that no binding contract arose from the letter. Plaintiffs appealed. We conclude, however, that no federal jurisdiction exists for this action under 29 U.S.C. § 185(a) and so remand to the district court with instructions to dismiss this case for lack of subject matter jurisdiction.

I.

The pension rights at issue here were alleged to have arisen through a letter from the local UMW president soliciting the plaintiffs' membership in the union in 1957. The key paragraph of that letter stated, "After being a member of the United Mine Workers of America, and working under the National Bituminous Coal Wage Agreement of 1950 as Amended October 1, 1956, [you] will be eligible to receive all benefits from our Welfare and Retirement Fund . . . ." However, in 1973, the trustees of the 1950 agreement-created pension fund amended the eligibility requirements of the fund to exclude applicants, like the plaintiffs, who lacked five years of classified service for a signatory employer after May, 1946. Accordingly, the pension fund denied plaintiffs' pension applications pursuant to these new eligibility criteria.

Plaintiffs then commenced a lawsuit (prior to this one) against the trustees of the pension fund alleging that the trustee-imposed exclusionary eligibility amendment was void as arbitrary and capricious. The district court in this previous action held that the eligibility amendment was not arbitrary and capricious and that therefore the plaintiffs had no pension rights under the fund established by the collective bargaining agreement. *Distler v. Huge,* Civil No. 77–4074 (E.D.Ill. April 7, 1978).

Plaintiffs then filed this action, seeking to establish that although they were found to have no pension rights under the terms of the collective bargaining agreement-created pension fund, such a right arose independently between the plaintiff and the

---

* The Honorable William J. Campbell, Senior District Judge of the United States District Court for the Northern District of Illinois, is sitting by designation.

union itself as a result of the 1957 solicitation letter. Thus, unlike in the first case, plaintiffs did not base their asserted entitlement on any construction of the pension fund or the collective bargaining agreements which gave birth to the fund, but solely on a bilateral agreement between the union and themselves as individual members.

The defendant moved to dismiss the action for lack of subject matter jurisdiction, noting that 29 U.S.C. § 185(a) authorizes suits "for violation of contracts between an employer and a labor organization" but not for violation of contracts, such as those alleged here, arising solely between the *employee* and the labor union. The district court, however, held that jurisdiction lay, citing the liberal construction normally given this provision and *Buzzard v. Local Lodge 1040 International Association of Machinists and Aerospace Workers,* 480 F.2d 35 (9th Cir.1973), which, as the district court noted, held that this provision supports a suit by union members against their union for redress of the union's refusal to honor rights conferred by union promises *in a collective bargaining agreement.*

## II.

Upon independent examination, however, we believe that no amount of liberal interpretation can bring this action under the canopy of 29 U.S.C. § 185. That provision authorizes only "[s]uits for violation of contracts between an employer and a labor organization ...." The action here, by contrast, is based upon an alleged independent contract running only between the individual union member and the union and is not founded on a union obligation *arising from the collective bargaining agreement.* While Section 185 *does* contemplate union members' suits against the trustees of a pension fund for their failure to properly administer the fund's mandates (on the theory that the pension fund's organic document is implicitly incorporated into the employer-union collective bargaining contract), *see, e.g., Sheeran v. General Electric Co.,* 593 F.2d 93, 95–96 (9th Cir.1979), it has

already been established through the plaintiffs' prior suit, *Distler v. Huge,* Civil No. 77–4074 (E.D.Ill. April 7, 1978), and it is uncontested here, that plaintiffs have *no rights under the terms of the properly amended pension fund.* As a result, in this case, plaintiffs have unveiled an entirely different, alternative theory which does not purport to locate their "contract" rights in the collective bargaining agreement or its child, the pension fund, but solely in an internal union-employee promise extrinsic to the union's obligation under the collective bargaining agreement. In no way can such a promise be construed as a contract "between an employer and a labor organization."

The district court apparently discounted this crucial distinction in relying on *Buzzard v. Local Lodge 1040 International Association of Machinists and Aerospace Workers,* 480 F.2d 35 (9th Cir.1973), to support jurisdiction. For there Section 185 coverage was upheld because the plaintiff union members' action was at bottom based on the union's alleged breach of a non-retaliation agreement running *between the union and the employer* as part of a strike settlement agreement. 480 F.2d at 40–41 n. 7. This case, however, involves no such union-employer contract. Instead, this case is more closely analogous to those alleging violation of members' rights under union constitutions. The courts have uniformly rejected the notion that such employee-union agreements qualify as "contracts" under 28 U.S.C. § 185(a). *Smith v. United Mine Workers,* 493 F.2d 1241, 1243 (10th Cir. 1974); *Hotel Employees and Restaurant Employees Local 400 v. Svacek,* 431 F.2d 705 (9th Cir.1970); *1199 D.C. National Union of Hospital and Health Care Employees v. National Union of Hospital and Health Care Employees,* 394 F.Supp. 189, 191 (D.D. C.1975). As the Tenth Circuit noted in *Smith,* "We recognize that [29 U.S.C. § 185(a)] must be liberally applied to promote industrial peace, but that principle has no application here. This controversy relates only to the construction and application of the union constitution and has nothing to do with labor-management rela-

tions." *Smith,* 493 F.2d at 1243. Likewise, this action asserts only the existence of an internal union promise to a group of its members, which is not, and could not, be grounded in the collective bargaining agreement and the amended pension fund; at least at this stage, the controversy is thus an internal union affair and does not touch labor-management relations, which were intended to be the subject of suit under Section 185.

In opposing defendant's motion to dismiss below, plaintiffs argued alternatively that their complaint could be construed as a "fair representation" claim, which *is* cognizable under Section 185 on the theory that the duty of fair representation arises directly from an exclusive collective bargaining agreement. Plaintiffs stated tersely that here "any breach of a promise which induced plaintiffs and other individuals to become members of the union would be a breach of the duty of fair representation." However, the fair representation analysis can have no jurisdictional impact here for two reasons.

First, apart from plaintiffs' belated assertion in their memorandum opposing dismissal, there is simply no indication that plaintiffs are in fact alleging, or could educe any facts to prove, a violation of the fair representation duty. Their complaint instead sounds entirely in common law contract principles[1] and does not in any way hint at "fraud, deceitful action or dishonest conduct" on the part of the union. *Hoffman v. Lonza,* 658 F.2d 519, 522 (7th Cir. 1981). Instead, their claim and argument revolves solely around the union's *explicit* obligation under a purported contract whose existence is subject to good faith dispute.

Second, even if plaintiffs appeared to advance some allegation of misconduct in connection with the alleged UMW-member

contract, we do not think such an allegation would be actionable under the "fair representation" standard. That duty, as the Supreme Court has noted, requires the union "fairly to represent all . . . employees, both in its collective bargaining agreement . . . and in its enforcement of the resulting collective bargaining agreement." *Vaca v. Sipes,* 386 U.S. 171, 177, 87 S.Ct. 903, 909–10, 17 L.Ed.2d 842 (1966). But any unfair conduct which might be alleged here would touch on neither the negotiation or ratification nor the enforcement of the collective bargaining agreement.[2] Such a claim is not actionable under "fair representation" principles. As the Fifth Circuit noted in rejecting the argument that plaintiff member's expulsion from a union apprenticeship program could be actionable under a fair representation analysis, "Because the [duty of fair representation] is imposed on the union as a result of its position as exclusive bargaining representative, it applies only to union conduct arising from the union's position as representative . . . . Therefore, union conduct that affects only an individual's relationship with the union structure is not circumscribed by the constraints [of that duty]." *Bass v. International Brotherhood of Boilermakers,* 630 F.2d 1058, 1062–63 (5th Cir.1980). Likewise, if plaintiffs here had actually made an unfair representation allegation in their complaint, it would not have concerned the action of the union in its *representative* capacity, but merely its actions *vis a vis* the employees with respect an independent promise unsanctioned, indeed prohibited, by the collective bargaining contract and the pension fund it authorized. Clearly, even had they claimed it, the "fair representation" path to jurisdiction would not have been available to plaintiffs.

For the foregoing reasons, this action is remanded to the district court with instruc-

---

1. Plaintiffs' operative legal allegation, ¶ 15, recites that "the refusal of the United Mine Workers of America Health and Retirement Fund to provide health and retirement benefits to the plaintiffs is a breach of the agreement made by and between the plaintiffs and the United Mine Workers of America . . . ."

2. *Compare Anderson v. United Paperworkers International Union,* 641 F.2d 574, 578 (8th Cir.1981) (union misrepresentation to members *in order to obtain ratification of collective bargaining agreement* actionable under duty of fair representation).

tions to dismiss it for lack of subject matter jurisdiction.

REMANDED WITH INSTRUCTIONS.