George T. ACRI, et al., Plaintiffs,

v.

INTERNATIONAL ASSOCIATION OF MACHINISTS AND AEROSPACE WORKERS, et al., Defendants.

No. C–82–0340 EFL.

United States District Court,
N.D. California.

Nov. 23, 1983.

On Motion To Amend Sept. 5, 1984.

Dan Siegel, Siegel, Friedman & Dickstein, Oakland, Cal., for plaintiffs.

Barry S. Jellison, Davis, Cowell & Bowe, San Francisco, Cal., Burton F. Boltuch, Boltuch & Siegel, Oakland, Cal., for defendants.

## MEMORANDUM OPINION

LYNCH, District Judge.

Plaintiffs, individual members of the International Association of Machinists and Aerospace Workers, originally filed this action on August 6, 1980, alleging breach of the duty of fair representation and breach of contract against the International and Local (collectively, "the Union") and American Can Company (the "Company"), their employer. The action was dismissed without prejudice as prematurely filed since resolution of the dispute through arbitration was pending; the stipulated dismissal provided that the statute of limitations was tolled as of August 6, 1980 to a date one year from the decision of the arbitrator, but not later than August 6, 1983. This action was refiled in this Court on January 14, 1982, within the time period stipulated to by the dismissal. The new complaint alleged only breach of the duty of fair representation against the Union.[1]

---

**1.** The Union argued during the arbitration proceedings that the Company had agreed that Section 8 did not represent a "cap" on the severance pay benefits available under Section 7. The arbitrator, however, in a decision rendered on October 14, 1981, held that the sections had to be read together and thus that Section 8 did provide a limit on the amounts which could be paid out under Section 7. Accordingly, the arbitrator divided the amount in the Section 8 fund pro rata among all those eligible for severance benefits under Section 7, resulting in awards of

*Factual/Procedural Background*

The 1974–1977 collective bargaining agreement between the Union and American Can Company contained the following provisions regarding severance pay:

7.0 If the Company (1) Closes the plant or a department or moves the plant or a department outside the present (meaning April 1, 1974) geographical jurisdiction of District #115 and (2) the closing or moving results in the termination of employees, the Company shall pay severance pay to terminated employees as follows:

(a) Less than one (1) year of accredited service—no severance pay;

(b) Over 1 year of accredited service—One (1) full week's pay (forty (40) hours straight time at the classification rate of pay) for every year of such service.

....

Section 8 provides in part:

8. FINANCING

Trust Fund

8.0 In accordance with the Plan, the Company will establish a trust fund. The Company will establish this Fund with a bank or banks or a trust company or companies selected by the Company as trustee.

The Company's contributions will be made into the Fund, the assets of which will be held and invested and applied by the trustee in accordance with the Plan. Benefits will be payable only from such fund.

When the 1974–1977 contract expired, plaintiffs conducted a strike concerning terms of a new agreement. During the strike, negotiations for a new contract were held. Plaintiffs allege that Union representatives stated that the cap on severance pay arguably inherent in the Section 8 Trust Fund provisions quoted above had been removed, although at no time did the Company agree to such a change; that plaintiffs relied on the statements in agreeing to ratify the new contract and return to

approximately 50% of what each employee would have received had there been no limit on

work from a strike which began May 1, 1977; that the Union continued falsely and deliberately to represent that such a change had been made in the severance pay provisions. When the plant closing was announced in February 1980, Union members were told that there were insufficient funds in the trust fund to pay severance pay at the full amount authorized by Section 7. Plaintiffs argue that they have been injured in relying on the misrepresentations to their detriment and that they are entitled to damages in the amount of the difference between what their severance pay would have been had the contract contained the terms stated in the Union's misrepresentation and what severance pay was actually paid by the Company.

Defendants filed a motion for summary judgment and to dismiss one plaintiff on September 9, 1983. Oral argument was heard on the motion on October 14, 1983. At that time, this Court granted the motion in part and took the remaining portions of the motion under submission. For the sake of clarity, this opinion will dispose of all parts of the motion.

*The Statute of Limitations*

■ Defendants argue that *DelCostello v. Teamsters,* 462 U.S. 151, 103 S.Ct. 2281, 76 L.Ed.2d 476 (1983) must be applied retroactively to bar plaintiffs' action. This decision has been applied retroactively in several other circuits. *See, e.g., Hand v. International Chemical Workers Union,* 712 F.2d 1350 (11th Cir.1983); *Metz v. Tootsie Roll Industries, Inc.,* 715 F.2d 299 (7th Cir.1983); and most recently and compellingly, *Perez v. Dana Corporation,* 718 F.2d 581 (3d Cir.1983). The Ninth Circuit, however, has not ruled on this matter. Assuming, *arguendo,* that the six-month statute of limitations established by *DelCostello* for a § 301 action based on a breach of a duty of fair representation case should be applied retroactively, this Court must nonetheless decide when the statute of limita-

severance pay other than as stated in Section 7.

tions began to run for each of the individual plaintiffs.

If this Court were to view this action simply as a common law fraud action, then California law would apply and the statute of limitations would run "only after one ha[d] knowledge of facts sufficient to make a reasonably prudent person suspicious of fraud, thus putting him on inquiry." *Hobart v. Hobart Estate Co.,* 26 Cal.2d 412, 437, 159 P.2d 958 (1945). *See Garter-Bare Co. v. Munsingwear, Inc.,* 650 F.2d 975 (9th Cir.1980).

However, this matter is a misrepresentation action in the labor relations context. The alleged misrepresentation is also a breach of the duty of fair representation. In the ordinary labor relations matter, "[t]he disposition of an employee's grievance becomes final at whatever stage of the grievance procedure the union and the employer resolve the grievance or terminate further consideration of it." *McNaughton v. Dillingham Corp.,* 707 F.2d 1042, 1046 (9th Cir.1983). The arbitrator in the instant case did not render a decision until October 14, 1981. Furthermore, the Company and the Union moved to dismiss this action when originally filed as premature [2] because the arbitration was pending. Thus, this Court holds that whatever statute applied must run from the date of the arbitrator's decision. This action was refiled within six months of the arbitrator's decision. Defendants have not argued in favor of a statute shorter than six months. Thus, defendants' motion for summary judgment on the ground of the statute of limitations is denied.[3]

### *Rulings on Summary Judgment or Dismissal as Made at the Hearing*

Without regard to the substantive issues supporting the remaining grounds for summary judgment, summary judgment is granted with respect to the following 12 plaintiffs for the reasons stated at the hearing on October 14, 1983. The Court notes both that plaintiffs' brief did not oppose granting of the motion with respect to these plaintiffs and that plaintiffs declined to argue against the motions at the hearing.

1. The eight plaintiffs who were not employed or members of the Union at the time the alleged misrepresentations were made: *i.e.,* BREGANTE, CHENG, GUAY, HUGHES, LEE, MADISON, MARJAI and SACKLEY.

2. The three plaintiffs who resigned prior to the plant closing: *i.e.,* HARRIS, MARKOVICH and WONG.

3. The one plaintiff who refused to comply with discovery orders: *i.e.,* HALMOS.

▬ Similarly, without regard to the remaining grounds for summary judgment,

**2.** Defendants argue now that the previously-filed action was premature only with respect to the cause of action against the Company for breach of contract. In defendants' argument the arbitrator was not presented with the misrepresentation issue nor could he have ever decided it, since it concerned a relationship between the Union and its members and not a dispute between the employees or the Union and the Company.

This argument is meritless. If the arbitrator had decided in favor of the Union, there would have been no misrepresentation and thus no suit against the Union for breach of the duty of fair representation. Hence, while the arbitrator may not have been squarely faced with the issue of the breach of the duty of fair representation, his decision held the alleged statement to be false.

Furthermore, it is settled law in this Circuit that the duty of fair representation includes matters involving the negotiation or administration of the collective bargaining agreement. *Retana v. Apartment, Motel, Hotel & El. Op. Union,* 453 F.2d 1018, 1024–25 (9th Cir.1972); *accord, Anderson v. United Paperworkers International Union,* 641 F.2d 574, 577–78 (8th Cir.1981).

**3.** Defendants also imply that the original grievance was not timely filed. *See* Memorandum of Defendants in Support of Motion for an Order Granting Summary Judgment, filed September 9, 1983, p. 9 n. 6. The record reveals no timeliness objection made at the time the grievance was originally brought. In view of this Court's position that the arbitration did affect the basis for this litigation, defendants are now equitably estopped from asserting the timeliness of the grievance. *See Schultz v. Owens-Illinois, Inc.,* 696 F.2d 505, 512–13 (7th Cir.1982).

defendants' motion with respect to deceased plaintiffs FRYDMAN, KESSLER and STARK is denied on the ground of failure to comply with Fed.R.Civ.P. 25(a). Although dismissal appears to be mandatory under this Rule unless a motion to substitute a representative is made within 90 days of a suggestion of death on the record, the incidental mention of the deaths in answers to interrogatories does not appear to this Court to have started the 90-day period running. Federal Form 30 provides an example of the proper suggestion; the answers to interrogatories cited by defendants do not rise to the required level of formality. Furthermore, the suggestion was not served as required by the provisions of the Rule.

### Proof of Misrepresentation and Proximate Cause

■ Defendants also move for summary judgment on the ground that plaintiffs cannot establish that defendants' alleged actions caused their injuries. Two major cases have been cited to this Court by both parties: *Anderson v. United Paperworkers International Union*, 641 F.2d 574 (8th Cir.1981) and *Deboles v. TransWorld Airlines, Inc.*, 552 F.2d 1005 (3d Cir.), *cert. denied*, 434 U.S. 837, 98 S.Ct. 126, 54 L.Ed.2d 98 (1977). In *Anderson,* a union representative told employee union members that their severance pay was guaranteed by a special security fund, knowing no such fund existed. The members testified at trial that they relied on the representative's statements in ratifying the contract and would have gone on strike if they had known the truth. The Court of Appeals held that the district court erred in failing to grant judgment for defendants notwithstanding the jury verdict on the ground that "the evidence fails to demonstrate a causal link between Gear's misrepresenta-

tions and the plaintiffs' injuries." 641 F.2d at 578–79.

Similarly, in *Deboles,* following a court trial, the district court found liability for a union's misrepresentations regarding union efforts to secure seniority provisions without proof that the contract would not have been ratified had the members been told the whole truth. 552 F.2d at 1017. The Third Circuit reversed "because false statements may not create liability under the federal labor laws absent a showing of tangible injury proximately resulting from the falsehood." *Id.*

Defendants have urged that the instant case presents the same problem of lack of proof of a causal nexus between the alleged misrepresentation and plaintiffs' injuries. Plaintiffs' counsel conceded at oral argument that he could not prove that, absent the alleged misrepresentation, the Company would have acceded to union demands for removal of the severance pay cap. Thus, as even plaintiffs' counsel concedes, there would be no way to prove that plaintiffs would have received all the severance pay to which they were entitled under the eligibility provisions of Section 7. It is thus further conceded that unless plaintiffs have another theory under which they are entitled to recover, summary judgment must be entered against them.

### Promissory Estoppel as a Theory of Recovery

Although this action is framed in terms of breach of the duty of fair representation, plaintiffs urge this Court to grant relief based on a theory of promissory estoppel.[4] Plaintiffs argue that they ratified the new contract and returned to work in reliance upon the Union's "promise" that the full amount of severance pay without

---

**4.** Plaintiffs' complaint does not include any cause of action based on promissory estoppel, although plaintiffs argued this issue orally. Plaintiffs also indicated at the hearing that they intended to move to amend their complaint to allege a cause of action based on promissory estoppel. Accordingly, for purposes of this motion, the Court will consider the present com-

plaint as stating a cause of action for promissory estoppel. Plaintiffs' oral and written argument appears to confuse promissory estoppel as a theory of recovery and as a measure of damages. This Court need not reach the damage issue in view of its ruling granting summary judgment.

regard to the "cap" of Section 8 was guaranteed.

■ Plaintiffs urge a novel application of promissory estoppel upon this Court. Plaintiffs conceded and defendants represented at oral argument that such a theory has never been reported in the context of a duty of fair representation case. The theory essentially creates consideration where there is none to permit enforcement of a (usually gratuitous) promise which reasonably can be expected to produce action or forbearance on the part of the promisee and which does so induce action or forbearance. Restatement (Second) of Contracts § 90 (1982). While the doctrine of promissory estoppel has been applied in a variety of contexts, both plaintiffs and defendants acknowledge that promissory estoppel has not been recognized by any court in the context of a breach of the duty of fair representation. *See, e.g., Tomerlin v. Canadian Indemnity Co.*, 61 Cal.2d 638, 39 Cal.Rptr. 731, 394 P.2d 571 (1964) (real estate sale); *Drennan v. Star Paving Co.*, 51 Cal.2d 409, 333 P.2d 757 (1958) (general contractor/subcontractor bidding); *Wade v. Markwell & Co.*, 118 Cal.App.2d 410, 258 P.2d 497 (1953) (mink coat pledge for loan).

■ This Court hesitates to extend the doctrine of promissory estoppel to the labor relations context. The policies underlying labor relations law strongly support deference to established precedent with respect to the adjudication of a breach of statutory duty such as the duty of fair representation. Furthermore, to permit the use of promissory estoppel in this labor relations context would permit plaintiffs to avoid the conceded difficulties of proof of proximate cause. Indeed, such proof is required by the labor relations misrepresentation cases such as *Anderson* and *Deboles*. As the Third Circuit has stated, "the federal courts have consistently required a direct nexus between breach of [the duty of fair representation] and resultant damages ...." *Deboles v. TransWorld Airlines, Inc.*, 552 F.2d 1005, 1018 (3d Cir.1977). In addition, to allow the use of promissory estoppel as a ground for recovery in this type of situation would encourage much litigation which is currently not authorized by statute, recognized by case law, or conceived of by legislative design.

Therefore, in view of the impossibility of plaintiffs being able to prove that the alleged misrepresentation caused their injury, defendants' motion for summary judgment must be granted.

IT IS SO ORDERED.

## ON MOTION TO AMEND

Defendants filed a motion for summary judgment and to dismiss one plaintiff on September 9, 1983. Oral argument was heard on the motion on October 14, 1983. At that time, this Court granted the motion in part and took the remaining portions of the motion under submission. Plaintiffs filed their motion to amend on October 24, 1983 and set December 2, 1983 as the hearing date. On November 23, 1983, this Court granted the remaining portions of the defendants' motions for summary judgment. The parties were requested by the Court to rebrief the motion to amend in light of the Court's ruling on summary judgment. The hearing on the motion was continued to January 27, 1984. The motion was argued and submitted by the Court on that date.

On rebriefing of the motion, plaintiffs conceded that a portion of their motion was rendered futile in view of this Court's opinion that recognition of a cause of action for promissory estoppel in the labor-relations context was justified neither on the basis of statute, decisional law nor legislative policy. Thus plaintiffs' motion is reduced to an attempt to add a cause of action stating a violation of Section 101(a)(1) of the Labor-Management Reporting and Disclosure Act of 1959, 29 U.S.C. section 411(a)(1) ("LMRDA"). In the procedural context of this case, the motion is made almost two years after the filing of the complaint, two months after the close of discovery, and almost four years after the

case was originally filed in August 1980.[1] Plaintiffs' motion states that it seeks only "to add two additional causes of action based upon precisely the same facts alleged in the original complaint."

### Standard

■ Federal Rule of Civil Procedure 15(a) provides that a party in plaintiffs' position "may amend his pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires." This Court has determined in its discretion that justice does not require the granting of plaintiffs' motion.

*Foman v. Davis,* 371 U.S. 178, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962), requires this Court to follow Rule 15(a) precisely and grant leave to amend with great liberality. The factors relied upon by the *Foman* court are the factors to be considered in this circuit: undue delay, bad faith, futility of amendment and prejudice to the opposing party. *Howey v. United States,* 481 F.2d 1187, 1190 (9th Cir.1973). This circuit has noted other circumstances which may be considered by the court, namely, lack of an adequate explanation by counsel for the delay in bringing the motion to amend, particularly when the facts upon which the proposed amendment is based are known to counsel at the time the original complaint was filed. *See, e.g., Jordan v. County of Los Angeles,* 669 F.2d 1311, 1324, *vacated and remanded on other grounds,* 459 U.S. 810, 103 S.Ct. 35, 74 L.Ed.2d 48 (1982), *reversing prior decision on other grounds on remand,* 713 F.2d 503 (9th Cir.1984). In this case, the motion to amend states that the causes of action sought to be added are based on "precisely the same facts" alleged in the complaint now standing. Furthermore, counsel candidly responded to the Court's inquiry at argument regarding the reason for the delay in seeking the amendment by replying that prior to the summary judgment motion, he had

thought that his original causes of action were a sufficient basis on which to grant relief. Counsel stated further that he was aware of the possible cause of action under LMRDA but chose not to include it at the time he filed his original complaint.

At this point in the litigation, the addition of a cause of action under LMRDA would necessitate further discovery and thus would prejudice the defendants. Plaintiffs' counsel attempts to circumvent the effect of this prejudice by offering (1) to limit discovery to a questionnaire; (2) to agree that the only facts which will be used to support claims for mental and emotional distress are those already developed in discovery; and (3) to dismiss entirely the claims for punitive damages and mental and emotional distress. But as defendants argue, such offers as (1) and (2) are hollow at best; defendants would be left to proceed on the basis of the unchallenged answers to questionnaires.

Furthermore, defendants' discovery to date has been tailored to the claims made in plaintiffs' existing complaint. If plaintiffs' claims change very far downstream, defendants are almost always prejudiced and certainly are in this case. The Ninth Circuit recently held that it was not an abuse of discretion to deny leave to amend to add a claim "raised at the eleventh hour after discovery was virtually complete and the [defendant's] motion for summary judgment was pending before the court." *Roberts v. Arizona Board of Regents,* 661 F.2d 796, 798 (9th Cir.1981). This procedural posture mirrors the status of the action before us now.

As discussed below, the LMRDA cause of action involves different elements of proof than the causes of action now existing. Certain types of relief may be available under the statute (*e.g.,* punitive damages and attorneys' fees) which were not available under the causes of action origi-

---

**1.** This matter was originally filed on August 6, 1980. The action was dismissed without prejudice as prematurely filed on stipulation of the parties concerning refiling. It is undisputed

that neither cause of action sought to be added herein appeared in the original filing nor the complaint filed in this Court in January 1982.

nally pleaded. Defendants suggest that, in fact, no discovery has been had as to any such damages, so that their only recourse would be the inefficient one of challenge at trial. Furthermore, even if plaintiffs dismissed the claims for mental and emotional distress, plaintiffs themselves would have to develop facts concerning their claim for punitive damages.

## Futility

■ As stated above, this Court may consider the question whether the amendment would be futile. The plaintiffs desire to amend their complaint to add a cause of action under Section 101(a)(1) of the Labor-Management Reporting and Disclosure Act, 29 U.S.C. Section 411(a)(1). That section states:

> Equal Rights.—Every member of a labor organization shall have equal rights and privileges within such organization to nominate candidates, to vote in elections or referendums of the labor organization, to attend membership meetings, and to participate in the deliberations and voting upon the business of such meetings, subject to reasonable rules and regulations in such organization's constitution and bylaws.

The Supreme Court in *Calhoon v. Harvey*, 379 U.S. 134, 138–39, 85 S.Ct. 292, 295–96, 13 L.Ed.2d 190 (1964) noted that the language of Section 101(a)(1) "is no more than a command that members and classes of members shall not be discriminated against in their right to nominate and vote." Consequently, Ninth Circuit cases which have recognized a cause of action for violation of LMRDA section 101(a)(1) have involved a specific instance of discrimination in application of rules or procedures. *See, e.g., Stelling v. International Brotherhood of Electrical Workers*, 587 F.2d 1379, 1384–85 (1978) *cert. denied*, 442 U.S. 944, 99 S.Ct. 2890, 61 L.Ed.2d 315 (1979)

(failure to submit an agreement to a vote does not assert a denial of a voting right given to any other member); *Kupau v. Yamamoto*, 622 F.2d 449, 453–54 (1980) (union's postelection reversal of preelection determination of candidate's eligibility asserts "uneven" application of eligibility criteria and "that element of discrimination" which states a LRMDA section 101 violation); *Lodge 1380, Brotherhood of Railway, Airline and Steamship Clerks, etc. (BRAC) v. Dennis*, 625 F.2d 819, 825–26 (1980) (international union's use of mailing lists absent an allegation that information was mailed to benefit international to detriment of local does not "allege the discrimination necessary to obtain jurisdiction under section 101(a)(1)").[2]

The plaintiffs place great reliance on the Fifth Circuit decision in *Christopher v. Safeway Stores*, 644 F.2d 467 (1981). In that case, the Fifth Circuit found that plaintiffs had stated an LMRDA cause of action by alleging that defendant union had not presented a "major proposition" to the membership for a vote. The union constitution specifically mandated that such propositions be submitted to a vote. The court rejected the union's argument that LMRDA would not recognize a violation in which all members were "discriminated" against equally by the union and suggested that any action by a union in contravention of a specific constitutional provision would be actionable.

This circuit, however, has not adopted *Christopher*, nor would *Christopher* be appropriate authority for the case before us. The specific constitutional provision attached to plaintiffs' rebriefed papers states only that proposals to settle a strike must be submitted to a vote. The fact that a vote was taken is central to this dispute; the plaintiffs allege that the union misrepresented certain crucial matters to its membership and in reliance thereon, the mem-

---

**2.** *Aguirre v. Automotive Teamsters*, 633 F.2d 168 (9th Cir.1980) is also inapposite. In *Aguirre*, a violation of LMRDA was found when votes were weighted during counting in an alleged instance of "ballot stuffing." Even in that case, the union's unequal treatment of one member's vote *vis-a-vis* another's vote resulted in the discrimination actionable under *Calhoon*.

bership voted to ratify a contract.[3] We seriously question whether the LMRDA or even the rationale of *Christopher* may be stretched to include a cause of action for misrepresentation such as the one before us in this case. The best theory on which the plaintiffs could proceed on these facts is the theory on which they have already proceeded and lost, namely breach of the duty of fair representation. No evidence appears in the record below which points to a constitutional violation by the union. Moreover, none of the LMRDA cases cited by the plaintiffs, even *Christopher,* suggest that an alleged misrepresentation by the union to its members in connection with a strike or contract vote states a claim under LMRDA. Accordingly, we find that the addition of such a cause of action to the complaint would be futile.

## Conclusion

 Finally, we find the words of Judge Renfrew applicable in this matter.

> The liberal amendment policy of the Federal Rules was not intended to allow a party to circumvent the effects of summary judgment by amending the complaint every time a termination of the action threatens. The time must arrive in every case when the plaintiff must demonstrate that there is a genuine issue for trial or have summary judgment entered against him.

*Glesenkamp v. Nationwide Mutual Insurance Company,* 71 F.R.D. 1, 4 (1974); *aff'd without opinion,* 540 F.2d 458 (9th Cir. 1976); *see also Roberts v. Arizona Board of Regents, supra,* 661 F.2d 796, 798 (9th Cir.1981); *Local 472, et al. v. Georgia Power Company,* 684 F.2d 721, 724 (11th Cir. 1982) (no abuse of discretion to deny motion to amend where motion "appears to be nothing more than an effort to avoid an adverse summary judgment ruling.") Since counsel conceded that the legal basis

for this cause of action was known to him at the time the complaint was filed and that the factual basis for the cause of action is also contained in the original complaint, we are forced to conclude that the motion to amend is an attempt to avoid the effects of the summary judgment which we have already granted in this matter. We believe, in any event, that the amendment would be futile under the law of this circuit and of this case, and that permitting an amendment at this time would result in prejudice to the defendants. For these and the reasons contained in the foregoing opinion, plaintiffs' motion is hereby denied.

IT IS SO ORDERED.

---

3. The factual basis for the allegation of the LMRDA cause of action raises an additional question regarding the futility of amendment to add such a cause of action. Summary judgment was granted on the breach of duty of fair representation cause of action on the grounds that

plaintiffs could not prove a causal nexus between the defendants' alleged misrepresentations and plaintiffs' injuries. See *Memorandum Opinion* filed November 23, 1983 at 8–9. It would appear that the LMRDA cause of action suffers from a similar defect.