Robert L. OLSON, Plaintiff,

v.

UNITED BROTHERHOOD OF CARPENTERS AND JOINERS OF AMERICA, LOCAL # 88, AFL–CIO, a labor organization; and Montana State Council of Carpenters, a labor organization, Defendants.

No. CV–81–30–BU.

United States District Court,
D. Montana,
Butte Division.

Feb. 16, 1983.

Donald C. Robinson, Poore, Roth & Robinson, Butte, Mont., for plaintiff.

R. Lewis Brown, D.L. Holland, Butte, Mont., for defendants.

## MEMORANDUM and ORDER

HATFIELD, District Judge.

This action is brought by plaintiff, and jurisdiction vests in this court, pursuant to Section 301 of the Labor Management Relations Act, 29 U.S.C. § 185. The plaintiff alleges that each of the defendant labor organizations owed the plaintiff a duty of fair representation and that this duty was breached by the defendants' failure to properly administer the union hiring hall established by the applicable collective bargaining agreement. For the plaintiff's claims to succeed, he must establish as to each defendant that the duty of fair representation applies, that said duty was breached and that such breach caused the damage complained of. *See, e.g., Archer v. Airline Pilots Association International,* 609 F.2d 934, 938 (9th Cir.1979).

Each of the defendants have separately moved for summary judgment. The Montana State Council of Carpenters (the Council) focuses on the duty element while the Local, though apparently recognizing its duty, contends that such was not breached.

## I

It appears that the Council, as bargaining agent of various local affiliates of the United Brotherhood of Carpenters and Joiners of America, including the defendant Local

# 88, negotiated and signed an agreement with the Montana Heavy Highway and Building Contractors Joint Council, as bargaining agent of various construction contractors. Article I § 2 of this agreement, known as the Montana Heavy Highway and Building Construction Agreement, states that the National and the Council are negotiating agents for the Local Unions and District Councils and that "in no event shall they be bound as a principal or be held liable in any manner for any breach of this agreement by any of the Unions for whom it is acting." Article IV of the agreement, dealing with hiring, provides for the establishment of local union hiring halls wherein a list of qualified unemployed workers is to be maintained.

It is undisputed that on or about February 26, 1980, plaintiff's name was either first or second on the hiring list. It further appears that on this date, Mr. Howard Rosenleaf, the Local's Business Agent was attending a union related meeting in Great Falls, Montana and that Mr. Harry Massett, an official of the Local, was in charge of the Local's office in Anaconda, Montana. Mr. Massett received a call from an area contractor requesting that two carpenters be dispatched to a job site at the Anaconda Company Smelter. All parties agree that plaintiff's position on the hiring hall list entitled him to be dispatched to this job. However, Mr. Massett was unable to locate the book containing the list. Mr. Massett's attempts to contact Mr. Rosenleaf in Great Falls were unsuccessful. Mr. Massett did, however, contact Mr. Robert Kokoruda, Executive Secretary of the Council, who was attending the aforementioned meeting in Great Falls. Mr. Kokoruda, after being apprised of the situation, simply told Mr. Massett that he should have the book. Mr. Massett then dispatched two other carpenters to the job.

The facts with respect to the plaintiff's period of unemployment after the above mentioned incident seem certainly to be disputed. The Local's brief states:

He (Mr. Rosenleaf) further testified that the next referral to which Olsen was entitled was received in the last week of May, 1980 and that efforts were made to contact Olsen but were unsuccessful and another person was dispatched to the job. (Rosenleaf Deposition, p. 46).

In the early part of June, 1980 Rosenleaf attempted to dispatch Olson to the same job site but he showed up for work days late and was refused employment by the job foreman. (Rosenleaf Deposition, pp. 51 and 52).

With respect to the same job opportunities, the plaintiff's brief states:

In late May or early June, 1980, the Plaintiff received a telephone call from a contractor who requested that he come to work on a bridge construction project on the Interstate highway near Garrison, Montana. The plaintiff advised the contractor that he was out of work and that he would be delighted to go to work. Plaintiff also advised the contractor that since he was still at the top of the hiring list, the contractor merely was required to call the Union and request that the top man on the list be sent to work. (Dep. Olson at 15–16, 23). Consequently, Plaintiff went to Garrison, Montana with his dispatch slip, confident that all procedures had been followed and that he would finally go to work. However, upon his arrival at the job he found that another carpenter had been dispatched from the Union hall. The contractor therefore refused to hire him. (Dep. Olson at 22–24, 28).

The plaintiff's brief also refers to plaintiff's deposition testimony that Mr. Kokoruda went to the plaintiff's home to discuss plaintiff's complaints lodged with Mr. Rosenleaf. Additionally, the plaintiff has submitted the affidavit of Mr. Charles H. Sewell, a member of the local, who affied that he had been informed by a contractor foreman that Mr. Rosenleaf had requested the foreman to hire plaintiff for three days to a week and then lay him off in order to get plaintiff "off of his back."

## II

Turning first to the Council's motion for summary judgment, the dispositive issue is

whether this defendant is bound by the statutory duty of fair representation. This issue in turn depends upon whether the Council is an exclusive bargaining representative of the plaintiff.

In *International Brotherhood of Electrical Workers v. Foust,* 442 U.S. 42, 99 S.Ct. 2121, 60 L.Ed.2d 698 (1979), the Court reviewed the origin and purpose of the fair representation doctrine:

> This Court first recognized the statutory duty of fair representation in *Steele v. Louisville & Nashville R. Co.,* 323 U.S. 192 [65 S.Ct. 226, 89 L.Ed. 173] (1944), a case arising under the Railway Labor Act. *Steele* held that when Congress empowered unions to bargain exclusively for all employees in a particular bargaining unit, and thereby subordinated individual interests to the interests of the unit as a whole, it imposed on unions a correlative duty "inseparable from the power of representation" to exercise that authority fairly. *Id.* at 202–204 [65 S.Ct. at 231–33]; see *Humphrey v. Moore,* 375 U.S. 335, 342 [84 S.Ct. 363, 367, 11 L.Ed.2d 370] (1964); *Vaca v. Sipes,* 386 U.S. 171, 182 [87 S.Ct. 903, 912, 17 L.Ed.2d 842] (1967); *Hines v. Anchor Motor Freight, Inc.,* 424 U.S. 554, 564 [96 S.Ct. 1048, 1056, 47 L.Ed.2d 231] (1976). The fair representation doctrine thus serves as a "bulwark to prevent arbitrary union conduct against individuals stripped of traditional forms of redress by the provisions of federal labor law." *Vaca v. Sipes, supra* [386 U.S.], at 182 [87 S.Ct. at 912]. Under the doctrine, a union must represent fairly the interests of all bargaining unit members during the negotiation, administration, and enforcement of collective-bargaining agreements. See, e.g., *Conley v. Gibson,* 355 U.S. 41, 46 [78 S.Ct. 99, 102, 2 L.Ed.2d 80] (1957); *Humphrey v. Moore, supra* [375 U.S.], at 342 [84 S.Ct. at 367]; *Hines v. Anchor Motor Freight, Inc., supra* [424 U.S.], at 563–567 [96 S.Ct. at 1055–58]. In particular, a union breaches its duty when its conduct is "arbitrary, discriminatory, or in bad faith," as, for example when it "arbitrarily ignore[s] a meritorious grievance or process[es] it in

> [a] perfunctory fashion." *Vaca v. Sipes, supra* [386 U.S.], at 190, 191 [87 S.Ct. at 916, 917].

442 U.S. at 46–47, 99 S.Ct. at 2124–25.

The far more typical fair representation case involves a claim by an employee that a grievance against an employer was mishandled by the union as his exclusive representative. As expressed by the Court in *Foust,* the doctrine of fair representation is designed to give an employee such recourse, because the employee is unable to directly handle his grievance with the employer, that responsibility having been exclusively vested by Congress in the Union.

In this case, the plaintiff has no grievance with any employer. The rationale of these cases would seem to apply nonetheless. The collective bargaining agreement requires employers to deal with the union, acting on behalf of the employees, in order to hire such employees. The hiring hall mechanism so established contemplates that each employee on the hiring hall list will be dispatched by the Union Local to the employer in their proper turn. The employee must depend on the Union to administer the agreement's hiring provisions, the employee's ability to secure employment independently of this system having been lost. The agreement itself, and the law, requires that the authority and responsibility of the Union to administer the hiring provisions be exercised fairly.

■ It appears to the court, however, that this authority and responsibility is vested, in this case, in the local, and not the Council. The collective bargaining agreement, under which the plaintiff seeks to bind the defendants, also contains, as quoted above, a recital of the various functions of the Locals and the Council. It appears to have been contemplated that the Council would bargain for the Locals, in order to concentrate the strength of the Locals, and that the responsibility for administering the terms of the agreement, as between employers and employees, was placed on the Locals. It is at the Locals' offices that the hiring lists are to be maintained, and it is

with the Locals that the employers must deal to secure employees as needed. When Mr. Kokoruda was contacted by Mr. Massett, his response was that the Local was supposed to have the book. He was correct in his assessment of the situation. Whatever steps Mr. Kokoruda took as agent of the Council cannot constitute a breach of a duty that had never arisen. The Council's motion for summary judgment will be granted.

### III

■ The Local, however, did have a duty to fairly administer the hiring provisions of the agreement, as the exclusive bargaining representative of the plaintiff. The leading case in this circuit, dealing with the duty of fair representation is *Robesky v. Qantas Empire Airways Ltd.,* 573 F.2d 1082 (9th Cir.1979). In that case, the court noted that *Vaca v. Sipes, supra,* added arbitrariness "to the catalogue of conduct the union is obliged to avoid." *Id.,* at 1086.

*Robesky* defined arbitrary acts or omissions of Unions as including those that are 1) without a rational basis and 2) those that are egregiously unfair. The court stated further that:

> While courts have said negligent conduct is not enough to breach the duty of fair representation, these references are to simple negligence violating the tort standard of due care. Acts or omission by union members may be so egregious, so far short of minimum standards of fairness to the employee and so unrelated to legitimate union interests as to be arbitrary . . .
>
> [U]nintentional acts or omissions by union officials may be arbitrary if they reflect reckless disregard for the rights of the individual employee . . . they severely prejudice the injured employee, . . . and the policies underlying the duty of fair representation would not be served by shielding the union from liability in the circumstances of the particular case, . . . .

*Id.,* at 1089–1090.

■ The question propounded by the defendant's motion for summary judgment is whether there is any material question of fact, and if not, whether the defendant local is entitled to judgment as a matter of law. Rule 56, Fed.R.Civ.P. As has been stated, material disputes clearly exist between the parties as to the cause of the plaintiff's period of unemployment after the initial incident involving the smelter job. This dispute alone renders summary disposition of plaintiff's claim against the Local impossible.

■ While there appears to be little, if any dispute as to the facts pertaining to the smelter job situation, the court does not find itself in a position of being able to conclude that these facts justify the conduct of the Local under the rationale of *Robesky.* The plaintiff has pointed to the testimony of Mr. Rosenleaf that the usual practice of the Local, after learning that a member had been improperly passed over, would be to require the contractor to terminate the wrong employee and hire the one entitled to the dispatch. The court is also without knowledge of why the hiring list was unavailable and what other alternatives might have been open to the Local in dealing with the problem once the situation arose. The defendant Local # 88's motion for summary judgment will be denied.

THEREFORE IT IS ORDERED and this does order that defendant Montana State Council of Carpenter's motion for summary judgment be and the same is hereby granted.

IT IS FURTHER ORDERED and this does order that defendant United Brotherhood of Carpenters and Joiners of America, Local # 88's motion for summary judgment be and the same is hereby denied.