George T. ACRI, Gray R. Althen, Jose Angulo, John R. Armstrong, Aronovsky, Morris N., Charles Attard, Norbert H. Baumbart, Duane V. Berg, Glen E. Berg, Waldo M. Bost, Joseph R. Boltes, Donald T. Braund, et al., Plaintiffs-Appellants,

v.

INTERNATIONAL ASSOCIATION OF MACHINISTS & AEROSPACE WORKERS: District Lodge 115 of the International Association of Machinists & Aerospace Workers; and Local Lodge 68 of the International Association of Machinists & Aerospace Workers, Defendants-Appellees.

Nos. 84–2467, 84–2509.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Oct. 9, 1985.

Decided Feb. 6, 1986.

---

Dan Siegel, Siegel, Friedman & Dickstein, Oakland, Cal., for plaintiffs-appellants.

W. David Holsberry, Davis, Cowell & Bowe, San Francisco, Cal., Burton F. Boltuch, Boltuch & Siegel, Oakland, Cal., for defendants-appellees.

Before REINHARDT, BEEZER and HALL, Circuit Judges.

CYNTHIA HOLCOMB HALL, Circuit Judge:

Plaintiffs-appellants, members of the International Association of Machinists District Lodge 115 ("plaintiffs"), appeal the district court's grant of summary judgment in favor of defendant-appellees International Association of Machinists, District Lodge 115 of the International Association of Machinists, and Local Lodge 68 of the International Association of Machinists (the "Union"), and the district court's denial of their motion for leave to amend. 595 F.Supp. 326 (1983). We affirm.

## BACKGROUND

From 1974 to 1977, the collective bargaining agreement (the "1974–1977 agreement") between the Union and the employer, American Can Company, provided for severance benefits to be paid from a particular fund. Under this provision the employer guaranteed severance pay only to the extent of the fund.

After the expiration of the 1974–1977 agreement, the Union struck. The limit on severance pay was an issue during the strike. At a union meeting on June 17, 1977, union representatives Bob Vegas and Stan Jensen allegedly told the union members present that American Can had agreed to remove the limit on severance pay. A new agreement was ratified at the meeting. There is no record of the breakdown of the ratification vote.

Plaintiffs became aware that the severance pay provision had not been revised in late 1977, when "paste-in" pages to the agreement were distributed and the severance pay provision in the agreement was unchanged. On February 1, 1980 American Can informed plaintiffs that it was going to close the plant as of April 30, 1980. Between February 1, 1980 and February 14, 1980 all plaintiffs were informed that there was not enough money in the fund to pay the full amount of severance pay to which plaintiffs were entitled. The Union proceeded to arbitrate the issue of whether American Can had agreed to remove the limit from the severance pay provisions.

Plaintiffs filed their first complaint on August 6, 1980, while the arbitration was still pending. On December 15, 1980 the parties filed a stipulation dismissing the action and tolling the statute of limitations from August 6, 1980 until one year after the arbitrator's decision or August 6, 1983, whichever came first. On October 14, 1980 the arbitrator determined that American Can had not agreed to modify the severance pay provisions, and awarded severance pay to union members *pro rata* at approximately fifty percent of the amount which they would have been entitled to absent the limit.

Plaintiffs filed the current cause of action for breach of the duty of fair representation under section 301(a) of the Labor Management Relations Act, 29 U.S.C. § 185(a) ("§ 301"), on January 14, 1982. The district court granted the Union's motion for summary judgment after discovery was completed. After oral argument on the summary judgment motion, but before the district court granted the motion, plaintiffs sought leave to amend their complaint to add a cause of action under section 101(a)(1) of the Labor Management Reporting and Disclosure Act of 1959, 29 U.S.C. § 411(a)(1) ("§ 101"), and seek damages for emotional distress. The district court denied leave to amend, finding that amendment would be futile and would result in substantial prejudice to the Union because it would necessitate further discovery.

## TIMELINESS OF PLAINTIFFS' CAUSE OF ACTION

The district court found that plaintiffs' cause of action did not accrue until the arbitrator rendered his decision, and therefore concluded that plaintiffs' action was timely even if the six-month statute of limitations applicable to unfair labor practices was applied to plaintiffs' duty of fair representation claim. The determination of which statute of limitations applies to a given cause of action is a question of law which we review *de novo*. *Edwards v. Teamsters Local Union No. 36*, 719 F.2d 1036, 1039 (9th Cir.1983), *cert. denied*, 465 U.S. 1102, 104 S.Ct. 1599, 80 L.Ed.2d 130 (1984). When, as in this case, the evidentiary facts determining the date of accrual are not in dispute, accrual is also a question of law. *Fleury v. Harper & Row Publishers*, 698 F.2d 1022, 1029 (9th Cir.) *cert. denied*, 464 U.S. 846, 104 S.Ct. 149, 78 L.Ed.2d 139 (1983).

Prior to the Supreme Court's decision in *DelCostello v. Teamsters*, 462 U.S. 151, 103 S.Ct. 2281, 76 L.Ed.2d 476 (1983), we applied the statute of limitations applicable to statutory causes of action under

state law in duty of fair representation cases. *See Edwards,* 719 F.2d at 1039–40. In *DelCostello* the Supreme Court held that duty of fair representation actions are governed by the six-month statute of limitations applicable to unfair labor practice cases. 462 U.S. at 163–72, 103 S.Ct. at 2290–94. We have given *DelCostello* retroactive effect only when the state statute of limitations was shorter than the six-month period provided by *DelCostello. Aragon v. Federated Department Stores,* 750 F.2d 1447, 1451 (9th Cir.), *cert. denied,* — U.S. —, 106 S.Ct. 229, 88 L.Ed.2d 229 (1985). In this case, state law provides a three-year statute of limitations. Cal.Civ. Proc.Code § 338(1). Because this action was filed before *DelCostello* was decided, and because state law provides a longer statute of limitations, the state statute determines the timeliness of plaintiffs' cause of action. *See McNaughton v. Dillingham Corp.,* 722 F.2d 1459, 1460–62 (9th Cir. 1984); *Edwards,* 719 F.2d at 1040–41.

"Although state law defines the length of the limitations period, federal law determines when the plaintiff's alleged cause of action accrued." *Archer v. Airline Pilots Association International,* 609 F.2d 934, 937 (9th Cir.1979)(citing *Price v. Southern Pacific Transportation Co.,* 586 F.2d 750, 754 (9th Cir.1978)), *cert. denied,* 446 U.S. 953, 100 S.Ct. 2920, 64 L.Ed.2d 810 (1980). Under federal law a cause of action accrues when the plaintiff is aware of the wrong and can successfully bring a cause of action. *See Impro Products v. Block,* 722

F.2d 845, 850–51 (D.C.Cir.1983), *cert. denied,* — U.S. —, 105 S.Ct. 327, 83 L.Ed.2d 264 (1984); *Baron v. United Artists Pictures Corp.,* 717 F.2d 105, 108 (3d Cir.1983). Applying this principle, we have held that a cause of action does not accrue at the time plaintiff becomes aware of a wrong if, at that time, the plaintiff's damages are not certain to occur or too speculative to be proven. *Archer,* 609 F.2d at 937–38 (duty of fair representation cause of action under the Railway Labor Act, 45 U.S.C. §§ 151–188, did not accrue until amount of contingent fee which plaintiff would be claiming as damages became certain). *See also In re Multidistrict Vehicle Air Pollution,* 591 F.2d 68, 72–73 (9th Cir.), *cert. denied,* 444 U.S. 900, 100 S.Ct. 210, 62 L.Ed.2d 136 (1979); *Hanson v. Shell Oil Co.,* 541 F.2d 1352, 1361 (9th Cir.1976), *cert. denied,* 429 U.S. 1074, 97 S.Ct. 813, 50 L.Ed.2d 792 (1977).

Plaintiffs became aware of the alleged misrepresentations when the paste-in pages were distributed in late 1977. Plaintiffs had not suffered any injury at this time. The injury occurred when the plant closed. Accordingly, plaintiffs cause of action did not accrue until sometime between February 1, 1980 and February 14, 1980, when plaintiffs were informed that the plant would be closed and that severance pay would be limited to the amount available in the fund. Plaintiffs' complaint filed on January 14, 1982 complies with the applicable three-year statute of limitations.[1]

---

1. In concluding that plaintiffs' cause of action did not accrue until the arbitrator rendered his decision, the district court applied the traditional approach to accrual in duty of fair representation cases under which a cause of action does not accrue until the union and the employer "resolve the grievance or terminate further consideration of it." *McNaughton v. Dillingham Corp.,* 707 F.2d 1042, 1046 (9th Cir.1983), *cert. denied,* — U.S. —, 105 S.Ct. 291, 83 L.Ed.2d 227 (1984). But this is not an ordinary duty of fair representation case in which a union member is suing a union for mishandling or failing to handle a grievance. Duty of fair representation claims relating to the negotiation of collective bargaining agreements or work rules are not subject to the requirement of exhaustion of administrative remedies. *Williams v. Pacific*

*Maritime Ass'n,* 617 F.2d 1321, 1328 (9th Cir. 1980), *cert. denied,* 449 U.S. 1101, 101 S.Ct. 896, 66 L.Ed.2d 827 (1981); *Beriault v. Local 40 International Longshoremen's Union,* 501 F.2d 258, 266 (9th Cir.1974) (failure to seek arbitration before filing suit in district court held irrelevant because arbitrator cannot grant the modification of an agreement sought in this type of duty of fair representation action). It follows that the accrual date for statute of limitations purposes should not be postponed until the arbitrator renders a decision.

The district court was correct in a practical sense in that a determination by the arbitrator that the limit on severance pay had been removed would have made this duty of fair representation action unnecessary. However, this concern does not necessitate a rule postponing

## THE UNION'S MOTION FOR SUMMARY JUDGMENT

The district court granted the Union's motion for summary judgment on plaintiffs' duty of fair representation and promissory estoppel claims. We review the grant of summary judgment *de novo*, viewing the evidence in the light most favorable to the nonmoving party. *Taylor v. Sentry Life Insurance Co.*, 729 F.2d 652, 654 (9th Cir.1984).

### A. Duty of Fair Representation

A union's duty of fair representation extends to conduct during the negotiation or administration of a collective bargaining agreement. *Retana v. Apartment, Motel, Hotel and Elevator Operators Union, Local No. 14*, 453 F.2d 1018, 1023–24 (9th Cir.1972). *See Bloom v. Teamsters Local 468*, 752 F.2d 1312, 1313–14 (9th Cir.1984). Specifically, a duty of fair representation cause of action can be maintained when union representatives make misrepresentations to the union membership during the ratification process, *Anderson v. United Paperworkers International Union*, 641 F.2d 574, 576–78 (8th Cir.1981); *Deboles v. Trans World Airlines*, 552 F.2d 1005, 1018 (3d Cir.), *cert. denied*, 434 U.S. 837, 98 S.Ct. 126, 54 L.Ed.2d 98 (1977), or in settling an unfair labor practice, *see Bloom*, 752 F.2d at 1313–14.

Although the duty of fair representation extends to misrepresentations during ratification, plaintiffs must establish a causal relationship between the alleged misrepresentations and their injury. *Brown v. UAW*, 689 F.2d 69, 71 (6th Cir.1982); *Anderson*, 641 F.2d at 580; *Deboles*, 552 F.2d at 1018–19; *Barrett v. Thorofare Markets, Inc.*, 452 F.Supp. 880, 883–84 (W.D.Pa. 1978). *Cf. Bloom*, 752 F.2d at 1313–14. In this context causation would be established by proof that (1) the vote to ratify would have been different had the misrepresentations not been made; and (2) that the company would have acceded to union demands had the vote been different. *See, e.g., Anderson*, 641 F.2d at 580; *Barrett*, 452 F.Supp. at 883.

At the hearing on the Union's motion for summary judgment in the district court, plaintiffs' counsel conceded that plaintiffs could not establish that American Can would have given in to their demand to remove the severance pay limit even if the strike had continued. Given this concession, we agree with the district court's grant of summary judgment against plaintiffs' duty of fair representation claim.

### B. Estoppel

The district court found that estoppel was not available as a theory of recovery in a suit by union members against their union. Although we disagree with this proposition, we affirm the grant of summary judgment against plaintiffs' estoppel claim because plaintiffs' cannot establish that they relied to their detriment on the alleged misrepresentations.

The equitable doctrine of estoppel is an alternative theory of recovery in suits by members against their unions; it is not preempted by section 301. *Hass v. Darigold Dairy Products Co.*, 751 F.2d 1096, 1099–1100 (9th Cir.1985). The elements of estoppel are determined by federal common law. *See Hass*, 751 F.2d at 1099–1100; *Thurber v. Western Conference of Teamsters Pension Plan*, 542 F.2d 1106, 1108 (9th Cir.1976).

We have distinguished between equitable estoppel and promissory estoppel. *Hass*, 751 F.2d at 1099. Equitable estoppel is the more appropriate theory in this case because the plaintiffs allege reliance upon misrepresentations or concealments of present fact, i.e., the Union's representation that the severance fund cap had been lifted in the new agreement, rather than reliance upon a promise or future guarantee. *See id. See generally* J. Calamari &

---

the accrual of duty of fair representation claims until the conclusion of related arbitration proceedings in all cases. If the district court finds that a pending arbitration decision may elimi-

nate the need to litigate a duty of fair representation claim *in a particular case,* the district court can stay the court proceedings until the arbitrator renders a decision.

J. Perillo, *Contracts* § 11–34, at 445 (2d ed. 1977).

In order to state a cause of action based on equitable estoppel in this case, plaintiffs must establish that: (1) the Union was aware of the true facts; (2) the Union intended its representation to be acted on or acted such that the plaintiffs had a right to believe it so intended; (3) the plaintiffs were ignorant of the true facts; and (4) the plaintiffs relied on the Union's representation to their detriment. *See Bob's Big Boy Family Restaurants v. NLRB,* 625 F.2d 850, 854 (9th Cir.1980); *see also Hass,* 751 F.2d at 1099–1100.

█ Even assuming the plaintiffs could establish the first three elements of equitable estoppel, plaintiffs cannot establish that their reliance on the alleged misrepresentations was to their detriment. The representations may have resulted in an earlier end to the strike than would have occurred otherwise. Plaintiffs concede, however, that they have no proof that American Can would have given in on the severance pay issue in response to a longer strike.[2]

## LEAVE TO AMEND

We review the district court's denial of leave to amend the complaint for an abuse of discretion. *M/V American Queen v. San Diego Marine Construction Corp.,* 708 F.2d 1483, 1492 (9th Cir.1983). Although leave to amend is liberally granted under Fed.R.Civ.P. 15(a), undue delay, bad faith in seeking amendment, or undue prejudice to the party opposing amendment are grounds for denying leave to amend. *Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962); *M/V American Queen,* 708 F.2d at 1492; *Roberts v. Arizona Board of Regents,* 661 F.2d 796, 798 (9th Cir.1981). We have also noted that late amendments to assert new theories are not reviewed favorably when the facts and the theory have been known to the party seeking amendment since the inception of the cause of action. *M/V American Queen,* 708 F.2d at 1492; *Stein v. United Artists Corp.,* 691 F.2d 885, 898 (9th Cir.1982).

█ Plaintiffs' attorney admitted that plaintiffs' delay in bringing the section 101 cause of action was a tactical choice because he felt that the causes of action already stated were sufficient. The district court found that plaintiffs' motion to amend was brought to avoid the possibility of an adverse summary judgment ruling,

---

**2.** In addition, plaintiffs argue that because their inability to prove damages is a consequence of the Union's wrongful conduct, the Union is "estopped" from denying damages. As the Union's misrepresentation prevented an informed ratification vote and, possibly, prevented the strike from continuing, it is impossible to predict whether American Can would have lifted the severance cap. This uncertainty in causation is attributable to the Union's breach of its duty of fair representation. Accordingly, the plaintiffs argue, the risk of the uncertainty should be thrown upon the wrongdoer with damages awarded to the plaintiffs.

In support of this arugment, plaintiffs cite several cases applying a more generous standard for proving the amount of damages where certainty has been prevented by the defendant's wrongful conduct. *See, e.g., Story Parchment Co. v. Paterson Parchment Paper Co.,* 282 U.S. 555, 563, 51 S.Ct. 248, 250, 75 L.Ed. 544 (1931) (antitrust case); *Frito-Lay Inc. v. Local Union No. 137, Int'l Bhd. of Teamsters,* 623 F.2d 1354, 1364 (9th Cir.1980) (section 301 suit by employer against union for illegal strike), *cert. denied,* 449 U.S. 1013, 101 S.Ct. 571, 66 L.Ed.2d 472 (1980) & 449 U.S. 1112, 101 S.Ct. 922, 66 L.Ed.2d 841 (1981).

Plaintiffs misperceive the application of these holdings to this case. These decisions applied a liberal standard of proof in situations where the uncertainty concerned the *amount* or extent of damages, not where the very fact of damages was contested. Contrary to plaintiffs' assertions, there is no dispute concerning the amount of damages in this case. If the cap on the severance pay fund had been removed, each employee would have received his full severance pay. Rather the dispute concerns whether there have been any damages at all, as there has been no showing that American Can would have removed the cap had the union mispresentations not been made. We have found no authority which would allow a plaintiff to avoid his burden of proving a *causal* connection between the wrongful act and some amount of damages because the defendant's actions have made that proof difficult. *Cf. Mead v. Retail Clerks Int'l Ass'n, Local Union No. 839,* 523 F.2d 1371, 1376–77 (9th Cir.1975) (section 303 unfair labor practice suit against union).

and that allowing amendment would prejudice the Union because of the necessity for further discovery. We conclude that the district court did not abuse its discretion in denying leave to amend in this case.

AFFIRMED.

REINHARDT, Circuit Judge, concurring:

I agree that the opinion Judge Hall has authored for the court correctly applies the law as it has evolved in judicial decisions. Accordingly, I join in that opinion. I write separately only to point out that the rule we follow has the practical effect, in almost every instance, of precluding union members from recovering against their unions in cases of this kind. We hold here, as courts have previously held, that a union member can establish liability only if he can show that had the strike continued, the employer would have acceded to the union's requests. This is a fact that is ordinarily simply not susceptible of objective proof. In this case, counsel for plaintiffs frankly acknowledged he would be unable to offer such proof. In other cases it is possible that less forthright counsel may submit affidavits that will enable their clients to survive summary judgment. The end result in any such case, however, would in all likelihood be a wholly unwarranted trial followed by a verdict for the defendant.

The most persuasive evidence as to what the employer might have done had a union continued to engage in a strike would be the employer's own testimony. Thus, our test seemingly puts it within the power of employers who have survived a bitter strike to punish the unions that called it. However, I suspect that generally employers will, for a variety of reasons, be unwilling to testify that they were prepared to offer their employees a more favorable contract than the one they agreed to.

Determining what would have happened had a strike continued is far different from determining what would have occurred had a matter been submitted to arbitration, or even what the result of good faith bargaining might have been. The consequences of an arbitrary or discriminatory failure to submit a case to arbitration should be determined in a manner similar to that used in a malpractice case in which an attorney has failed to file a suit within the period prescribed by the statute of limitations: an objective evaluation is made as to the merits of the claim and its probable outcome. A make-whole remedy in a failure-to-bargain case is arrived at by determining what other comparable employers in the area have agreed to do following good-faith bargaining. (See *Martori Bros. Distributors v. James-Massengale*, 781 F.2d 1349 (9th Cir.1986), for description of the specific method used under California Agricultural Labor Relations Act.) However, it will almost always be far too speculative to attempt to show that an employer who has agreed to a particular collective bargaining agreement following a strike would have granted one or more specific additional benefits had the strike continued for a while longer. In short, the rule that union members must prove that a continuation of the strike would have resulted in an improved contract defies practicality and makes little sense in the every day world of labor relations.

I hasten to add that I think that a rule that makes breach of the duty of fair representation suits impractical in cases of the type before us achieves a desirable result. Were I free to decide what the law *should* be, I would simply not permit suits against union officials by union members dissatisfied with their officers' conduct in negotiating collective bargaining agreements. Judge Hall's opinion, properly applying precedent, achieves that same result indirectly, by placing an impossible causation barrier in the way of such actions. In my view, the union's own election and removal process provides the proper vehicle for addressing complaints like the plaintiffs'. Negotiating labor contracts is difficult enough in these times without the additional threat of lawsuits from unhappy union members, with the attendant possibility of personal liability. Today's labor contracts no longer are automatic vehicles for gains

by individual workers. Now, contracts containing cutbacks or reductions in benefits are far from infrequent. Dissatisfaction over the contents of a labor agreement is too easily transformed into a suit over the union official's performance.

It is true that the extreme case, a deliberate lie by a union officer regarding the contents of the agreement negotiated, is a sympathetic one for permitting litigation. However, there is a simple method of eliminating the possibility of any such occurrence. It is within the power of union members to require, in the union's by-laws or otherwise, that contracts be submitted to a vote only after the proposed changes have been reduced to writing and furnished to the membership. Such a rule would avoid the type of problem that allegedly arose here; it would not, however, result in any significant delay in the ratification process.

In any event, I agree that, under the current state of the law, Judge Hall's opinion, in which I fully join, states the applicable rule correctly.