Clyde ALLEN; Jack Allen; Michael Bach; Ronnie Berry; Russell Bryarly; et al., Plaintiffs–Appellants,

v.

UNITED FOOD & COMMERCIAL WORKERS INTERNATIONAL UNION, AFL–CIO, CLC; Local No. 554 United Food and Commercial Workers; Sara Lee Corp., Defendants–Appellees.

No. 93–35807.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Oct. 3, 1994.

Decided Dec. 12, 1994.

Jerome F. McCarthy, Law Offices of Jerome F. McCarthy, Tacoma, WA, for plaintiffs-appellants.

Renee Bowser, Washington, DC, Bruce M. Brooks, Perkins & Coie, Seattle, WA, for defendants-appellees.

Before: . LAY,* TROTT and T.G. NELSON, Circuit Judges.

TROTT, Circuit Judge:

## OVERVIEW

Plaintiffs-appellants, former employees of Hygrade Food Products Corporation and Sara Lee Corporation ("Hygrade"), bring this action under section 301(a) of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185(a), claiming their union, the United Food and Commercial Workers International Union and the United Food and Commercial Workers Union, Local 554 ("Union"), breached its duty of fair representation by conspiring with Hygrade to deprive them of their severance benefits. The district court granted the defendants' motion for summary judgment, concluding the plaintiffs' claim was barred by the six-month statute of limitations. The plaintiffs appeal, contending the district court erred in determining the date the cause of action accrued. Because we find the plaintiffs' cause of action accrued more than six-months prior to the date the present suit was initiated, we affirm.

## FACTS AND PRIOR PROCEEDINGS

Plaintiffs are former employees of Hygrade, a corporation engaged in the manufacture of food products. In 1985, Hygrade announced it would be closing its antiquated Tacoma, Washington facility. The closure was avoided, however,. when the Union agreed to make contract concessions during negotiations for.a new 1986–89 collective bar-

* The Honorable Donald P. Lay, Senior Circuit Judge for the Eighth Circuit, sitting by designa-

tion.

gaining agreement. The final agreement included a restriction on severance benefits: in the event the plant closed, employees hired after April 1, 1986 and employees with an immediate right to pension benefits would not be entitled to separation pay.

In 1989, the Union and Hygrade began negotiations for a new, 1989–92, collective bargaining agreement. During the negotiations, the Union proposed dropping all separation pay restrictions, noting the exclusion of pension eligible employees from severance benefits might violate federal law. Hygrade agreed to look at the problem, but stated it would not increase its separation pay liability. Ultimately, as part of a proposed collective bargaining agreement, the parties negotiated a severance benefits formula that provided for a separation payment to all employees offset by the then present value of the employee's vested pension benefit.

The Union representatives presented the proposed agreement to its membership at a April 16, 1989 meeting, but a contract summary distributed to the employees during the meeting did not contain information concerning the change in severance benefits. The parties dispute whether separation pay was discussed during the meeting. The union membership ratified the new agreement, and printed copies of the contract were distributed to the employees several months thereafter.

On July 10, 1990, Hygrade announced it would be closing the Tacoma facility on September 8, 1990. On July 23, 1990, union officials received an actuarial analysis displaying the present value of each employee's pension benefit. The analysis revealed that after severance benefits were offset by pension benefits, most employees would not be entitled to a separation payment.

The Union held meetings with its members on July 14, August 4, August 14, and August 24, 1990 to discuss the ramifications of the plant closure. At the August 4 meeting, employees were told the 1989 change in severance benefits effectively eliminated all sep-

aration pay. The employees also were told the Union and Hygrade were engaged in "effects bargaining" pursuant to the requirements of LMRA, 29 U.S.C. § 158(a)(5), (d), which might result in the restoration of some of the employees' lost severance benefits.

The effects bargaining eventually culminated in a plant closing agreement containing a new severance benefits formula. On August 24, 1990, the Union informed its members that employees would receive less separation pay than under the 1986 agreement, but more than under the 1989 contract.

Former employees filed this suit as a hybrid action [1] under section 301 of the LMRA, claiming the Union breached its duty of fair representation by conspiring with Hygrade during the 1989 negotiations to eliminate severance benefits, and by concealing those changes during and after the ratification process. The complaint was filed on February 22, 1991.

The district court granted the defendants' motion for summary judgment, determining that the plaintiffs' cause of action was time-barred because it was filed more than six months after it accrued. The plaintiffs timely appealed. We have jurisdiction under 28 U.S.C. § 1291, and we affirm.

## STANDARD OF REVIEW

"A grant of summary judgment is reviewed de novo." *Jesinger v. Nevada Fed. Credit Union*, 24 F.3d 1127, 1130 (9th Cir. 1994).

## DISCUSSION

It is now settled that a six-month statute of limitations applies to a section 301 action. *DelCostello v. International Bhd. of Teamsters*, 462 U.S. 151, 169–72, 103 S.Ct. 2281, 2293–94, 76 L.Ed.2d 476 (1983); *Gardner v. International Tel. Employees Local No. 9*, 850 F.2d 518, 520–21 (9th Cir.1988). Plaintiffs accept the six-month limitations period, but contend the district court erred when determining the date their cause of action accrued.

---

1. "'Hybrid' suits involve allegations both that the employer breached the collective bargaining agreement, and that the union breached its duty of fair representation in handling" the collective

bargaining negotiations. *Gardner v. International Tel. Employees Local No. 9*, 850 F.2d 518, 520 n. 2 (9th Cir.1988).

The district court counted backwards from the date the plaintiffs' suit was filed and determined the cause of action must have accrued no earlier than August 22, 1990 to escape being time-barred. In pinpointing the specific date of accrual, the district court held that "the plaintiffs' claim arose when they knew or should have known that their severance pay had been all but abolished." Finding it undisputed that after the August 4, 1990 meeting employees knew or should have known that the 1989 agreement effectively eliminated severance benefits, the district court fixed August 4 as the date the plaintiffs' claim accrued.

On appeal, the plaintiffs do not contest the state of their knowledge after August 4, 1990, but argue the "extent of [their] injury was not known until August 24, 1990 when they were informed by the union that some, but substantially less than all, of the separation pay had been restored in negotiations for a plant closing agreement." Plaintiffs contend a suit initiated before August 24 would have been dismissed because prior to that date the plaintiffs' damages were speculative.

 A cause of action accrues when the plaintiff knew, or should have known, of the defendant's wrongdoing and can successfully maintain a suit in the district court. *Acri v. International Ass'n of Machinists & Aerospace Workers*, 781 F.2d 1393, 1396 (9th Cir.), *cert. denied*, 479 U.S. 816, 107 S.Ct. 73, 93 L.Ed.2d 29 (1986). An action cannot be successfully maintained if, at the time the plaintiff becomes aware of the wrong, the plaintiff's damages are not certain to occur or too speculative to be proven. *Id.* Accordingly, we held in *Archer v. Airline Pilots Ass'n Int'l*, 609 F.2d 934 (9th Cir.1979), *cert. denied*, 446 U.S. 953, 100 S.Ct. 2920, 64 L.Ed.2d 810 (1980), "[w]here future damages are too speculative to prove at the time the defendant's wrongdoing takes place, the cause of action for future damages, if they ever occur, will accrue only on the date they are suffered." *Id.* 609 F.2d at 938 (internal quotations omitted).

Plaintiffs argue that prior to August 24 their damages, like the plaintiff's in *Archer*, were speculative. In *Archer*, the employee went to his union with a grievance against his employer. When the union failed to resolve the matter to Archer's satisfaction, he hired an attorney and filed suit against the employer. After the court ruled in his favor, Archer sought to recover court costs and attorney's fees from his union, arguing the union had breached its duty of fair representation by refusing to act on his grievance. In determining when Archer's claim against the union accrued, the court looked to see "the point at which any injury to the union member allegedly caused by the Union became fixed and reasonably certain." *Id.* at 937 (internal quotations and brackets omitted). The court held that Archer's claim of reimbursement for contingent fees owned to his attorney was not time-barred. The court observed that, until Archer prevailed against his employer and payment of the contingent fees became fixed and certain, damages were speculative because "the size of the fee could have ranged anywhere from zero to tens of thousands of dollars." *Id.* at 938.

*Archer* is readily distinguishable from the present case. In *Archer*, the employee claimed the union breached its duty of fair representation by failing to properly handle his grievance. Here, the plaintiffs allege the Union breached its duty of fair representation during collective bargaining negotiations. "A reasoned analysis of the question when a duty of fair representation claim accrues must focus on the context in which the claim arose." *Galindo v. Stoody Co.*, 793 F.2d 1502, 1509 (9th Cir.1986). The employee in *Archer* could only establish that the union's inaction damaged him in the form of contingent attorney's fees by prevailing in the court action against his employer. On the other hand, in the instant case the plaintiffs' damages were fixed at the time the Union allegedly breached its duty during the 1989 contract negotiations; the scope of the injury was set when the Union failed to gain or retain a favorable severance benefits formula. That the plaintiffs' damages might have varied, depending on the outcome of the effects bargaining, does not render those damages speculative. In determining whether damages are speculative we have "distinguished uncertain *damage*, which prevented recovery, from an uncertain *extent* of damage, which did not prevent recovery; that is, the failure to establish an injury, from the not uncommon imprecision with regard to its scope." *In re Multidistrict Vehicle Air Pol-*

*lution,* 591 F.2d 68, 73 (9th Cir.), *cert. denied,* 444 U.S. 900, 100 S.Ct. 210, 62 L.Ed.2d 136 (1979). Our decision in *Acri v. International Ass'n of Machinists,* 781 F.2d 1393 (9th Cir.), *cert. denied,* 479 U.S. 816, 107 S.Ct. 73, 93 L.Ed.2d 29 (1986), confirms the application of this principle to fair representation claims.

In *Acri,* the employees' contract right to severance pay was limited to a specific fund. During negotiations for a new agreement the union told its members the employer had agreed to remove the limit on severance pay, when in fact it had not done so. The employees brought suit against the union, alleging it had breached its duty of fair representation during the collective bargaining process. In determining the date the employees' cause of action accrued, the court stated: "[W]e have held that a cause of action does not accrue at the time plaintiff becomes aware of a wrong if, at that time, the plaintiff's damages are not certain to occur or too speculative to be proven." *Id.* at 781 F.2d 1396 (citing *Archer,* 609 F.2d at 937–38). Applying this test, the court found the employees' claim accrued when the employees became aware of the union's misrepresentations and the plant's closing made the injury certain. *Id.*

In the present case, any damage to the plaintiffs became fixed when the Union agreed to a new severance benefits formula during the 1989 negotiations. Any injury became certain when the plant closure was announced on July 10, 1990. Plaintiffs knew, or should have known, of any Union misconduct no later than August 4, 1990 when the employees were told the 1989 agreement effectively eliminated severance benefits. Thus, by August 4 the plaintiffs were aware of any wrong and could have successfully maintained a cause of action in the district court.

Nevertheless, plaintiffs ask us to toll the accrual date until August 24, 1990 because prior to that date effects bargaining could have "modified" or eliminated their damages.[2] The LMRA requires that certain employers bargain with employees over the effects of a plant closure. *See* 29 U.S.C.

§ 158(a)(5), (d); *First Nat'l Maintenance Corp. v. NLRB,* 452 U.S. 666, 681–82, 101 S.Ct. 2573, 2582, 69 L.Ed.2d 318 (1981). Plaintiffs do not contend the Union violated its duty of fair representation during the effects bargaining. Therefore, benefits gained during effects bargaining would only act to mitigate any damage caused by the Union's alleged breach during the 1989 negotiations. The possibility that subsequent events might influence the plaintiffs' ultimate recovery does not "necessitate a rule postponing the accrual of duty of fair representation claims." *See Acri,* 781 F.2d at 1396–97 n. 1. Plaintiffs could have timely filed suit and requested the district court stay proceedings until the effects bargaining concluded. *See id.*

## CONCLUSION

The plaintiffs' claim was filed more than six months after the cause of action accrued on August 4, 1990 and is barred by the statute of limitations. The district court order granting summary judgment for all defendants is AFFIRMED.

---

**2.** Plaintiffs do not raise, and we do not decide, the issue of whether the Union's August 4, 1990 representations implicate the doctrine of equita-

ble estoppel. *See Atkins v. Union Pac. R.R. Co.,* 753 F.2d 776, 777 (9th Cir.1985).